The Honorable, the Judge of the United States Court of Appeals for the Fourth Circuit. Please be seated. All right, we're going to take up Simon v. Gladstone. Good morning, Your Honors. May it please the Court. My name is Michael Wein. I represent the appellant, Simon Gladstone. Your Honor was talking earlier about slam dunks. You don't normally see too many slam dunks, particularly in civil rights litigation. There's no dispute in this case that my client was a victim of a vicious, premeditated conspiracy amongst Baltimore City police officers, specifically those officers assigned to the Gun Trace Task Force. It was done for, he spent at least 317 days in jail simply for being in the wrong place at the wrong time. He was hauled off to a hospital after being hit by one of the officers, Officer Jenkins. You know, I was looking in your complaint for what actually happened. In other words, the plaintiff alleges that this happened. He was driven. I couldn't find any facts in the whole complaint about what your plaintiff's complaining about. You just start listing reports that this officer confesses to this and this officer. And I assume, putting it all together, that Officer Jenkins or Sergeant Jenkins somehow hit him while he was on a sidewalk. And then to cover up, planted a gun there. That's the simple answer. The question is, I mean, was this an accident that he was not paying attention and hit him? Was he injured as a result? Did your man protest, saying that's not my gun? In other words, there's no factual allegations. I'm not sure that's the issue before us today, but I was just astounded by this long complaint that has no allegations at the plaintiff. It complains, personally, this is what happened to me. Well, Your Honor, the original allegations were more of a court variety. Yes, there are arguments that Officer Jenkins, after running onto the sidewalk to go and hit him. You say arguments. That was alleged to be the report of another officer. Yes. But I wanted to know what your man alleges happened. You don't allege it in the complaint anywhere, do you? Yes, we do, Your Honor. What paragraph? But it's also in the criminal. No, I asked you what paragraph did you allege it in the complaint anywhere? What's your man's version of what happened? I mean, specifically, I know it was also in the Gladstone plea, and that was actually discussed. Yeah, but that's Gladstone's plea. That's hearsay stuff. Well, no, it was the guilty plea on page Joint Appendix Extract 24 discusses this, as does Mr. Bromwich was discussing this with Chief Judge Bredar. I can see that you have a lot of people confessing to certain facts or their own versions of the facts from their own point of view. But usually you have a complaint and you say a plaintiff sues defendant and alleges as follows. And what happened? While I was walking along the sidewalk, I was hit by an officer. Something that gives your man's version, not somebody else's. In a normal situation, obviously, Mr. Simon would have had the right to go and file for a car accident. But you just dumped this huge amount of information on the court. It was a voluminous record. And then it's almost as if you wanted the court and the defendant to kind of do your work for you. And, you know, I think the job of an advocate is to help frame an issue. And you don't want to pull your dump truck up to the curb and just unload on the court and say, here, you folks figure it out. Respectfully, Your Honor, this was an unusual situation because before the civil rights lawsuit was filed, there had already been multiple state and federal investigations. That didn't make this unusual. Your man has a complaint. You said it's a slam dunk. He has a complaint. And to me, it's important to understand, especially with the limitations issue, it's important to ask what he is alleging the facts to be on which he's basing his claims. A plausible claim. Sure. And you didn't do that anywhere in the complaint. Well, with all due respect, I mean, it was pointed out that as a result of simply being involved in this accident or not. Your man did not allege that. You allege what an officer admitted to. You allege what this officer admitted to, how he plead. Where do you allege that the plaintiff claims, what he claimed happened on? He was a victim of a conspiracy where they planted a. Well, I understand. I got that from all the other things. I had to go. I had to tease it out as well. But a lot of these came afterwards in terms of unraveling the conspiracy. It doesn't matter. It doesn't matter. You have to allege. Never mind. The issue here today is when did your cause of action approve? That's one of the main ones. Yes, of course, Your Honor. And with all due respect, we are at a stand standard of whether there's any reasonable factual inferences. But in addition to that, there were not just our arguments, but also incorporating the arguments for the facts that had at that time, and all these had kind of come around and been first discovered in 2019. And there had been investigations, including the Bromwich Report, by 2022. That came out in January. That argument is the same as your complaint. You say these facts, that facts were discovered. Well, sure they were. But the question is what is your claim? And then we can look at those facts and decide when you should have known of them. But respectfully, Your Honor, it should be from what my client had happened to him, what he reasonably thought. He was already in jail. He had been put in jail for 317 days. He had been put in the hospital first, before the weapon was planted. Did he know the weapon was planted? We don't know, Your Honor, but no. What do you mean we don't know? He was there. Did he complain, that's not my gun? He didn't complain in the sense of he was no prost about 317 days later. No, no, I'm asking you, did he complain at the scene of the accident? There's no record that he complained. Of course there's no record. You didn't make any allegations. When he gets to jail, he says, that's not my gun, they're framing me. He should be going to jail and he says, I'm astounded, I've been framed. Well, Your Honor, the only thing that the court found, the Lowell court, Judge Rubin, was that once someone knows that they're innocent, quote unquote, then you've got about three years. We are focusing on the fraudulent concealment. So the question is, when did he learn he could have the cause of actions? And I understand the resistance to filing a suit against a police department and against police officers when you've been arrested. The chances are de minimis. But then you come into February of 2017 and all these officers are indicted. It seems to me that takes away that fear, if you had the fear. In fact, I would point, Your Honor, that my client was in jail. It wasn't the officers, the three officers that were completely unknown. When did he get out of jail? What day? He got out of jail in 2021, Your Honor. Now, there was an earlier period where he was out of jail after 317 days. And then there was about six or seven. After he was arrested? Yes. He got released, didn't he? Yes, in February of 2015. Okay. Now, so how can you say he was in jail? I'm saying by you were asking about 2017. He was in jail. He was in jail through 2021. Well, then let's go back to 2015. He knows he was wrongfully convicted. Your Honor, he wasn't convicted. He was charged, arrested. I mean, I would point to at least three trial-level decisions from the Maryland Federal Court, including Johnson v. That's the problem with this complaint. You never alleged him, and you may learn in the next complaint to allege facts that lead to a plausible claim. That's the mandate. Your Honor, I believe that there was, including the federal investigations by the state of Maryland. But the publicity given to the actions of the Baltimore Police Department with regard to this particular unit were outrageous. And I don't think anybody disputes the fact that they were trying to plant evidence to absolve themselves. And what they did was that in trying to absolve themselves, they disadvantaged horribly the perfectly innocent people. But then there was all of this publicity. The Justice Department brought suit against them. The Baltimore papers covered it extensively. The actual culprits in this whole scheme were criminally prosecuted and had to plead guilty. And your client was released from custody February 15, 2015. And the question I have is, given this deluge of publicity about these outrageous actions, how could you not be on inquiry notice? How could you not be? It was filed. The question is, when does that inquiry notice begin? We would contend it was when the unsealing of Officer Gladstone's indictments, and then there were later Officers Dignola, who wasn't mentioned at all throughout the investigation at all as being involved, as well as Officer Hankard. And directing Judge Niemeyer's attention, JA-270 goes into great detail in terms of this was about the plea and how that my client had not, that they had planted a gun after he went through this. They planted a gun. That's reported there and so forth. But your man never gives his version of the facts. I was walking along the sidewalk. A police car hit me. I ran, or I was hurt. Whatever was said that they arrested me for no, without telling me anything about why they arrested me. They planted the BB gun there. It wasn't my gun. I mean, he knew all these things in 2014. With all due respect, I don't believe he did. And he certainly didn't know. Stop right there, please. What fact did he not know in 2014? He didn't know how this gun came out. He knew it was not his, didn't he? He knew that he didn't have a gun. But this is Baltimore. Certainly, we didn't know that there was the, as Officer Gladstone briefly testified, in a depot that was held shortly prior to the settlement in the Burley case, that he had arrived after my client was carted to the hospital. He dropped it off in a fence area. That's not where it ended up. It ended up near a car in the area. That he had responded to Officer Jenkins there. He had come with Officer Vignola. He had come with Officer Hankard. And this area was also being courted off. So, respectfully, you're talking about, if I may finish, I see my time is up, I'll leave it to a rebuttal, but I'd like to finish answering your question, Judge Niermaier. These are facts that have not been allowed to go before depositions. Okay, thank you. And that is because of where we are in the standpoint. Thank you. Hold on a second. Judge, do you have any questions? No. Judge Niermaier. We have no questions. Thank you. Mr. Corley. Good morning, Your Honors. May it please the Court. My name is James Corley. And myself and my colleague, Michael Redman, are here on behalf of Appellee Baltimore Police Department and the individual officer appellees. Your Honor, the District Court properly dismissed this action as being time-barred. There are only three relevant dates. On March 26th of 2014, Mr. Simon was pursued by Baltimore Police Department officers, including Appellee Jenkins, without probable cause. He was assaulted with a vehicle. A firearm was planted at the scene. He was subsequently arrested and charged in relation to that firearm. On February 5th of 2015, all charges related to that arrest were dismissed, and he was released from jail. Seven years and two days later, he filed a complaint. That's the thing. We're not talking about a day late or something like that. We're talking about seven years, eight years, seven years after release from false imprisonment, the state statute of limitations, which you borrow, is three years. RICO is four years. I mean, this is years late. Yes, Your Honor. Jenkins pled guilty in January of 2018. Yes, Your Honor. At that plea guilty, everything unraveled. The indictments unraveled the two years before, or what year before, whenever it was, two years, whatever. The indictments were publicized on March 1st of 2017, Your Honor. 17. Jenkins pleads guilty the next January, and that's still beyond the limitations period. And moreover, Your Honor, Jenkins pled guilty. Officer Herschel chose to go to trial, and two of the GTTF officers testified in the trial in January of 2018 that Mr. Jenkins advised his subordinates to keep a BB gun in their vehicles so that if they hit somebody, they could plant it. And it was publicized nationwide in newspapers. The newspaper articles are cited in our brief. There's no question, and Mr. Simons conceded, that he knew he did not have a gun. When he was released on February 5th of 2015, he knew that he had been arrested for having a gun that he did not have, and he knew the name of the arresting officer. I think you set this argument out very carefully in your brief, and you can tell from the panel's questions and everything that we've been attentive to your argument. I'm going to, at this point, throw this open to my colleagues to see if they wish to hear further from you, and if they have questions, I'm going to ask you to entertain them. But if they do not have questions, perhaps you might wish to conclude. We have no questions, and we think concluding the argument might be something you wish to do. Your Honor, if you have no questions, I will not take up any more of the Court's time. All right. Thank you, Your Honor. Thank you. Mr. Wahad? Getting back to the arguments, there's three questions presented. We're trying to focus on the statute of limitation. There's at least three Maryland not-appellate decisions. One is green. That has a very similar circumstance to that. What changed in green, that was by Judge Massetti, was after there had been a Washington Post article, and that had exposed that what seemed to be normal rough tackles by the Washington Redskins were, in fact, a deliberate bounty. So that changed it from what seemed to be innocuous or certainly not extraordinary into an intentional tort, and the Court said that the conspiracy there justified at least denying a motion to dismiss because that changed the focus, that no one was able to predict that, and it was a fraudulent concealment doctrine, which is a Maryland doctrine as part of the Maryland discovery. Wait. Let me ask you. Fraudulent concealment, to your complaint, I don't remember how many articles, but you attached pages and pages of articles regarding this corruption with Baltimore Police Department. What's the concealment? There was numerous concealments, Your Honor. One was that they would go and lie in the police report. They would also go and plant the gun so that people would go to jail, as my client did. They would also go and lie to the grand jury. But we knew this as early as, I think, what, 2015, 2017? With all due respect, Your Honor, those are a different set of officers, and even that, because that was perhaps the Ursel individuals, H-E-R-S-Y-Y. Jenkins. Wasn't it Jenkins? One does involve Jenkins, yes. Yeah, Jenkins was a leader of the tort in your situation. But respectfully, Your Honor, when you're talking about all the individuals, there was another three-group, Gladstone, Vignola, and Hancock, and that is really where no one knew. In fact, the city stressed that no one could know. When they were arguing the Potts case in the Maryland Supreme Court, which is the only actual precedent that has gone on with the Goncay's task force, they claimed that because of all these false and criminal actions that they couldn't know and no one could possibly know, and, ergo, that they should not be held on the hook. Judge Benjamin has cut to the heart of the matter, and she's saying you've alleged fraudulent concealment. There's never been a less concealed matter that I can see. It was all out in the open, and you've detailed it in the joint appendix. There's no concealment here. It's about as public, the misdeeds of the Baltimore Police Department in this instance, or about as public as anything could possibly be. If I can, Your Honor. The attorneys need to go and make, if they're going to make a case, they need to go and be able to do it when there's a plausibility. That's not what the federal requires. And you can't respectfully, particularly when Mr. Simon was in jail nearly all this time after he'd been arrested. I guess I'm confused about that. I thought he was released in February of 2015. Yes, Your Honor. So you keep saying that he's in jail because I was going to ask you about your equitable tolling. He was arrested on other charges in late 2015. So from 2000, late 2000, so there's about seven months when he was not in jail, Your Honor. And then he was in jail through about end of 2021. And, of course, there's nothing to prove him in filing suit while he's in jail either. We get suits from people in jail all the time. Right, but no one had any knowledge, according to the Baltimore City as well, about Glassone being involved. In fact, his name was not on the record, nor was Hanker, nor was Vignola. They were not even noted, even though other officers saw them at the scene. You know, this is about whether you've been wronged and you understand you've been wronged. And he knew that the leader of this group was Jenkins, and whoever else was there, every detail that gets uncovered. You rely on the very same stuff in trying to postpone the limitations, the very same type of publicity that occurred years before with respect to Jenkins and Herschel and all the others that were in that group. With all due respect, I think you have to go and look at it from a more specific standpoint. You can't just go and say, well, every officer is corrupt, and ergo now everyone should need to be sued. So this man knows in 2014 he was wrong. He knows personally I didn't do anything wrong. And so he sits there and waits seven years, eight years, eight years. He waits to decide, you know, I figured out when I was wronged that that was the police department's fault. But respectfully, the better public policy, there is public policy negatives if your Honor takes it to the extent that the state, excuse me, that the city of Baltimore wants. They've actually said, quote, and this is on page 10 of their brief, in order for appellant's March 7, 2002 complaint and subsequent First Amendment complaint to be timely, he must not have been aware of even a single cause of action against a single defendant prior to March 6, 2019. What they're suggesting is that if you're aware of even a tortuous car accident, that everything else cannot, you know, must be done then and there. Even if it was completely futile, no reasonable attorney in the world would have known it. And it took the federal authorities to go and uncover the pernicious conspiracy that involved my client specifically. And that never became public until March 6, 2019. And it was mailed to him, which he didn't receive for a couple weeks, in jail. So respectfully, that is a reasonable, it doesn't open the door, it's fairly unusual in any circumstance, where you have a federal investigation of crooked cops committing civil rights violations, which two of them pled guilty to. One was found guilty by a jury two months after this complaint was filed. And so respectfully, that is a reasonable limitation. It is really for the jury to decide what counts as what he reasonably should have known about this. And we would ask for discovery in the case, the dismissal to be vacated and for discovery to begin in earnest. Unless this court has any more questions. Thank you, sir. All right, we'll come down and shake hands and proceed to our final case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, DeAndrea Gist Benjamin